# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS

### FIRST DISTRICT—MARCH TERM, 1898.

### Louis H. Jacobs v. Dora Marks.

1. PLEADING—*In Actions for Deceit.*—A declaration in an action for deceit, which avers the making, knowingly, of the false statements in relation to a matter material to the transaction, the reliance of the plaintiff upon such statement as true, and that he was induced thereby to act to his detriment and loss, if sustained by proof, will authorize a recovery.

2. EVIDENCE—*Knowledge of Falsity in Actions for Deceit.*—Positive proof of knowledge of the falsity of representations by the person making them is not required, but may be inferred from other facts which are proved.

**Action in Case**, for deceit. Trial in the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in the Branch Appellate Court at the March term, 1898. Affirmed. Mr. Presiding Justice WINDES dissenting. Opinion filed May 26, 1899.

BLUM & BLUM, attorneys for appellant.

JOHN W. BYAM and CHARLES L. MAHONY, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court upon a rehearing.

A rehearing was granted February 24, 1899, upon petition of appellee. The appellant has not availed himself of

(156)

his right, under the rules of this court, to answer the petition, although the ten days allowed by the rules within which to make such answer have long since elapsed. We must, therefore, as is provided by the rules, consider the cause once more upon the record, abstracts, original briefs and the petition for rehearing.

Our former opinion proceeded upon the theory that the facts appearing in this record were substantially the same as those set forth in the criminal cause, entitled People v. Jacobs, 72 Ill. App. 276, wherein Jacobs having been convicted, was plaintiff in error and not defendant in error.

But, upon further consideration, we think there is a material distinction in some respects between the facts of this case and of that one, and furthermore, that we should consider this case in a somewhat different aspect than was there presented, because of the special finding of the jury in this case, and not there existing, upon a controlling question of fact.

In response to a special request submitted to them by the appellant, the jury found that appellee did not sign a certain agreement between herself and the appellant and one Neufeldt on the day of its date. Great stress is laid in the opinion, in the criminal case above referred to, upon the there claimed fact that appellee did sign said agreement on the day of its date, which is the exact opposite of the fact as found by the jury in this case.

The declaration here is for deceit by appellant in inducing appellee, by means of false and fraudulent representations, to her made by appellant, to part with $5,000 of her money.

It is averred:

" That the defendant (appellant) desired to join with one Nathan Neufeldt in the business of the manufacture and sale of furniture at   *   *   * , and to incorporate a company for the purpose of carrying on said last enterprise; *   *   * that the defendant was a man of small means, and was required by said Nathan Neufeldt to furnish more money to the enterprise than the defendant had, and for that purpose was required by the said Neufeldt to induce

some third person to put money into the said enterprise, who would agree to become one of the corporation for the purpose of carrying on the said scheme of manufacturing and selling furniture;· * * * that the defendant, being anxious to join the said Neufeldt in said scheme or enterprise, and being further desirous to induce the plaintiff to join with him and said Neufeldt in said scheme for incorporation and the enterprise of sale and manufacture of furniture at * * * , on or about the 15th day of June, A. D. 1893, wrongfully and injuriously contriving and intending to deceive, defraud and injure the plaintiff (appellee) in this behalf, falsely, fraudulently and deceitfully represented and asserted to the plaintiff that said Nathan Neufeldt was a man of large wealth and means, the owner of the house he lived in at Chicago, which said defendant averred was worth twenty thousand dollars, and the owner of a factory at Chicago, which said defendant averred was worth sixty thousand dollars; that said Neufeldt would contribute twenty-five thousand dollars in cash as his share of the money to be put into the said corporation at its beginning, and that he, defendant, would pay into the said corporation the sum of twelve thousand and five hundred dollars, and * * * the plaintiff, confiding in the said representations and assertions of the defendant, at the request of the defendant agreed to pay to said defendant the sum of five thousand dollars to be applied about the business of the corporation to be formed of the plaintiff and defendant and Nathan Neufeldt, for the purpose of manufacture and sale of furniture. * * * And the defendant, by falsely, fraudulently and deceitfully pretending and representing to the plaintiff that the said false, fraudulent and deceitful representations of the defendant were true, caused the plaintiff * * * to pay to the defendant the sum of five thousand dollars for the purpose of becoming a member of the corporation to be formed, * * * whereas in truth and in in fact the said Neufeldt did not own the said house he lived in, nor a factory at Chicago worth twenty thousand dollars and sixty thousand dollars, respectively, nor did he own any real estate, house or factory, nor did the said Neufeldt promise or intend to pay to the said corporation and enterprise the sum of twenty-five thousand dollars in cash, nor did the defendant intend to put into the said corporation and enterprise twelve thousand five hundred dollars in cash, as the defendant at the time of his making his said false and deceitful representations well knew; and the plaintiff further saith that the defendant, by means of

Jacobs v. Marks.

the premises, * * * falsely and fraudulently deceived the plaintiff, and induced her to become a member of the corporation formed of the plaintiff and defendant and the said Neufeldt, * * * and to take shares in the same, and thereby the said shares of stock in the said corporation have become and are of no use or value to the plaintiff," etc.

The gist of the representations averred in the declaration and relied upon by appellee is not of what either Neufeldt or Jacobs would do in the future—not that they or either of them would put money into the enterprise at some future time—but is as to Neufeldt's present property and financial ability.

It was the representation that Neufeldt was then, at the time the representations were made, a man of large wealth, the owner of the house he lived in, worth twenty thousand dollars, and the owner of a factory worth sixty thousand dollars—present, existing and material facts—that constituted the false representations which induced appellee to contribute her five thousand dollars to the enterprise.

It is true, the representations that Neufeldt would contribute twenty-five thousand dollars, and that Jacobs would contribute twelve thousand five hundred dollars, were as to something to be done in the future by them, and if they were all that is relied upon the declaration would fail to sustain the recovery. It was proper to state those facts in the declaration as a part of the history of the transaction, but the deceit relied upon does not depend upon them. They are important only in considering whether the representations as to present ability were false and were material.

Appellee might readily believe that the future promises would be performed if she were assured of the present ability of Neufeldt to perform them. To show to appellee his present ability to perform the future acts, the representations were made of his present ability, and were material representations. It was them that appellee avers she relied upon as true, and was induced to put in her money because of, and they and their falsity, and appellant's knowledge of their falsity, at the time he made them, were explicitly averred.

A declaration in an action for deceit, that avers the making, knowingly, of the false statement in relation to a matter material to the transaction, the reliance of the plaintiff upon the statement as true, and that plaintiff was induced thereby to act to his detriment and loss, will, if sustained by proof, authorize a recovery. Merwin v. Arbuckle, 81 Ill. 501.

Positive and direct proof of knowledge of its falsity, by the one making the representation is not required, but may be inferred from other facts that are proved. Hiner v. Richter, 51 Ill. 299.

We regard the declaration as sufficient.

The false representations, the knowledge by the appellant that they were false, their falsity in fact, the materiality of the representations, the reliance upon them by appellee and the consequent damage, all sufficiently appear in the declaration.

The declaration avers the representations to have been made on June 15, 1893.

The appellant introduced in evidence an agreement signed by Neufeldt, the appellant and the appellee, dated June 8, 1893. If this agreement were signed by appellee on the date it bears, her contention that she entered into the enterprise relying upon the truth of the representations, averred by her declaration to have been made on June 15th, must fall.

It is this agreement which the jury specially found was not signed by appellee on June 8, 1893.

The day the agreement bears date the appellee was in Escanaba, Michigan, the place of its date, and she might, physically, have signed it at that time and place.

The appellee testifies positively that she did not sign the paper on the day it is dated, and names the date of signing it as August 22, 1893, and she details numerous circumstances in corroboration of her statement.

There is nothing in the paper, of an intrinsic nature inconsistent with the fact of its being signed at either time.

Whether the evidence of the appellee, as to the date of

signing the paper, and the corroborating circumstances to which she testified, should or not prevail over the testimony of appellant and the Michigan lawyer, both of whom testified that it was signed in Escanaba on the date it bears, is difficult to say. The circumstance that the Michigan lawyer, who was also a notary public in that State, took the acknowledgment in Chicago of the execution of these parties and Neufeldt, of the incorporation papers, filed with his certificate of acknowledgment, in the office of the Secretary of State of Michigan, when, as he testified, he had not authority as notary public to take acknowledgments out of the county in Michigan for which he was appointed, may have materially discredited the weight of his testimony in the minds of the jury. The further fact that Neufeldt, who was present at the interviews on June 8th and on August 22d, and testified in the case, was not questioned as to the time or place of appellee signing the paper, may also have had weight in the minds of the jury. If such circumstances were given much weight by the jury, and they were entitled to be considered, the jury had a sufficient basis for their finding in appellee's favor upon the fact of when the paper was signed. As between appellee and the appellant, the jury might well have believed her in preference to him. A party who takes advantage of a confiding friend is quite likely to be discredited when he undertakes by his mere word to justify his conduct.

The special finding is in all respects consistent with the general verdict, and there is no such preponderating weight of evidence against its correctness as to justify us in disregarding it.

Appellant contends that the appellee is materially contradicted, in material respects, by her own testimony, given in an attachment suit brought by her against the corporation in the courts of Michigan. The record in this case does not show any such contradiction. Upon the trial, appellant's counsel asked appellee if certain questions were not put to her upon the trial of the suit in Michigan, and if her answers thereto were not as reported to her. Her answer to the

question which was put to her (embodying in one question what purported to be several questions to and answers by her in the Michigan suit), was: "It is over three years ago, and I can't say just what I said on the stand up there."

An argument based upon the assumption that she testified in this suit that Neufeldt and Jacobs were not to put in their part of the contribution to the capital of the corporation in a lump sum, but only from time to time, as the business required it, is valueless.

The only evidence in this record of any testimony given by appellee in the Michigan suit was the testimony of a stenographer who took shorthand notes of the testimony given in that case, and who, with such notes before him, testified in this case as to what her testimony there was. He, however, did not testify that he had any recollection of her testimony independently of his notes, nor that the notes truly represented her testimony, nor that the notes were in the same condition at the time of the trial as when taken down in the Michigan suit, nor does it appear in what connection, in that suit, with other testimony there given, her testimony, if as stated, was given.

The falseness in fact of the representations made to appellee by appellant, their materiality, the reliance of appellee upon them believing them to be true, and her consequent loss, are too plainly established by the evidence to leave room for questioning the verdict upon the ground that the evidence in those respects fail to support it. The knowledge by appellant at the time of their making, that as to Neufeldt they were false, is the only remaining material fact concerning which it may be urged there is room for doubt. But considering all the circumstances in evidence—including the particular ones that appellant had been in the employment of Neufeldt for six or seven years just before, in a responsible position, and seemed, according to his testimony, to have possessed Neufeldt's confidence concerning his business affairs, and the evidence that tended to show that Neufeldt and appellant had previously entered into an agreement that appellant should have a salary of $3,500 per

Jacobs v. Marks.

year from the proposed corporation if he would get appellee into the enterprise with her money—we may not say that the jury were not justified in finding this fact also against appellant.

Our conclusion is that, upon the facts, the verdict must stand.

But appellant contends also that there is material error of law in the record.

After appellant's demurrer to the declaration was overruled by the Circuit Court he interposed, besides a plea of the general issue, a special plea, wherein it was set forth that after the time at which said false representations are alleged to have been made, appellee brought a suit in Michigan, against the corporation that was formed, involving the same subject-matter as this suit; that jurisdiction of the parties and subject-matter was acquired in that suit, and that thereafter a settlement of said cause was come to, and before this suit was begun the Michigan court entered of record in that cause an order, as follows:

" This cause having been settled, it is hereby discontinued by consent of both parties, without cost to either party."

To such special plea the appellee filed a denial of its truth by replication, and upon the issue made upon the plea evidence was heard and instructions given, with the result of a verdict adverse to the truth of the plea.

Appellant insists that even if the subject-matter of the plea was immaterial, appellee made it material by replying to it, and made the result of the case depend upon the determination of the issue upon the plea. Possibly, but the issue upon the truth of the plea was found against him. It is also insisted that under the evidence, upon the issue presented by the plea and replication, the jury should have been instructed, as was requested, to find for appellant. It would have been manifestly improper for the court, under the evidence, including the written agreement entered into as the basis for the discontinuance of the Michigan suit, to have given the instructions that were offered and refused

concerning the legal effect of the settlement. of the Michigan suit.

The court did instruct the jury, at appellant's request, in respect of the Michigan suit and its settlement, as follows :

" You are instructed that if you find from the evidence that the plaintiff herein instituted a suit in the Circuit Court of Delta County, Michigan, against the Chicago Furniture & Lumber Company, for the purpose of recovering the $4,000 involved in this suit now before you, and that she made a settlement of this case with the defendant therein, or any one else, that the plaintiff is barred from the further prosecution of this suit, and the verdict of the jury must be for the defendant."

Such instruction was, to say the least of it, all that the appellant was entitled to in respect of the matter covered by it.  To have gone further, as the court was requested to do, and instruct the jury that under the evidence, before them they should find a verdict for the appellant, would have been most manifest error, the evidence being considered.

We can not follow appellant's argument that the discontinuance of the Michigan suit amounts to a *retraxit* in practice, and constitutes a bar to this action, further than to agree with him as to the legal effect of a *retraxit*, as between the parties to a suit, and that it differs from a nonsuit, and also from a *nolle prosequi*.

The argument is without force when applied to the evidence introduced under the issue that was made upon the plea.  The written agreement alone, under which the suit was discontinued, dissipates the force of the contention.

The point is made that the attachment writ in this case should have been quashed for non-compliance with the statute in the manner of suing it out.  We will not prolong our opinion by a discussion of the question.  The alleged error in such regard was not given among the reasons filed in the Circuit Court as grounds for a new trial, nor was it included in the single ground of variance, upon which the motion in arrest of judgment was based.  We have, however, considered the question upon its merits

Jacobs v. Marks.

sufficiently to conclude there was not any material error committed in respect of it.

Upon a consideration of the whole record, the judgment is right, and should be affirmed.

MR. PRESIDING JUSTICE FREEMAN, dissenting.

This was an action for deceit.   The facts are substantially the same as in  People v. Jacobs, 72 Ill. App. 286, where they are stated clearly and at length.   There is no material difference in the evidence between that case, as it is stated in the opinion, and the one now presented.

The question was submitted to the jury, whether the contract of June 8, 1893, was signed on that day, as claimed by appellant, or in August following, as testified by appellee. The jury found specially that it was not signed June 8th. But this finding is upon evidence almost identical with that before the other branch of this court in the criminal case. It was there said :  "We are of opinion that there is a decided preponderance of evidence that the contract of date June 8, 1893, was signed on the day of its date."

The fraud and deceit charged  in the declaration are that defendant was a man of small  means; that he represented that one Neufeld was a  man of  large wealth and means, the owner of the house he lived in at Chicago, worth $20,-000, and of a factory at Chicago worth $60,000; and that he, Neufeld, would contribute $25,000 in cash to the new enterprise at its beginning, and that the defendant Jacobs would pay in $12,500; and that, confiding in these statements, appellee paid in $5,000; whereas, in fact, Neufeld did not own said property, and did not "promise or intend to pay" in $25,000, nor did defendant intend to pay in $12,500, as he at the time well knew, and that the plaintiff was thus deceived.

Appellee subsequently drew out $1,000, which was returned to her by appellant, leaving the amount of her investment $4,000.

The allegation in the declaration that appellant was a man of small means, and that, desiring to induce appellee to invest $5,000 in the enterprise, he wrongfully, intending

to deceive and defraud, falsely, deceitfully and fraudulently represented that Neufeld was a man of large wealth and means, the owner of the house he lived in at Chicago worth $20,000, and of a factory in Chicago worth $60,000, charges a false representation as to existing facts, and it is the only such allegation in the declaration. It is alleged that the representations were made on or about the 15th day of June, 1893. If the contract of June 8th was actually signed on that day, and in my opinion the evidence that it was so signed decidedly preponderates, then these alleged false representations were made after appellee had agreed with Neufeld and Jacobs to subscribe $5,000 for stock, and could have had no influence in inducing her to do so.

But, accepting the jury's finding upon that point as conclusive, this allegation as to Neufeld's wealth can hardly be considered as material, by itself, and it is coupled with and made a part of the other allegation upon which appellee relied, according to her declaration and evidence, setting forth representations that Neufeld and Jacobs would contribute the amounts stated to the new corporation. If Neufeld had actually made such contribution the amount and value of his property would have been immaterial.

But these statements alleged in the declaration to have been made by Jacobs, but which appellee testifies were made by Jacobs and Neufeld, respectively, namely, that Jacobs *would put in* $12,500 cash, and that Neufeld *would put in* $25,000 cash, were merely promissory.

In People v. Healy, 128 Ill. 9–15, it is said:

" In an action to recover for fraud and deceit, the plaintiff must allege the facts relied on as constituting the fraud, and where false representations are relied upon it is essential that they relate to some material existing fact or facts, and not to the future intention of the defendant, which he may or may not perform."

And the court quotes from Kerr on Fraud and Mistake, 88:

" As distinguished from the false representation of a fact, the false representation as to a matter of intention, though it may have influenced a transaction, is not a fraud in law."

The falsity of these statements, even though the promise was not intended to be complied with, would not necessarily be proven by evidence tending to show that Jacobs and Neufeld did not at the time possess the means to enable them to put in that amount of cash. The intention might have been perfectly honest, and based upon expectations of being able to raise the amount as needed from time to time. Neufeld's testimony tends to show that he was able to raise the amount agreed to be contributed by himself, and Jacobs appears from the evidence to have had nearly three-fourths of the amount agreed to be contributed by him.

" It can not be said that these representations were false when made, for, until the proper time arrived, and plaintiff refused to comply with them, it could not positively be known that they would not be performed." Gage v. Lewis 68 Ill. 604, 615.

And in the same case it is said :

" A promise to perform an act, though accompanied at the time with an intention not to perform, is not such a representation as can be made the ground of an action at law. The party should sue upon the promise, and if this be void he has no remedy."

Representations alleged to be false, which the evidence in this case tends to show relate to a material existing fact, are testified to by Mrs. Marks as having been made when she turned over her certificate of deposit for the purpose of paying in her own contribution to the capital stock of the new corporation. She says she was informed by Jacobs that he and Neufeld were ready to put their money in, and that Neufeld produced three papers, white and blue, one of which she thought looked like her certificate of deposit, and said : " Here is our money." If this evidence could justify the conclusion that Jacobs and Neufeld then and there falsely represented that they were about immediately to put in, the one $25,000 and the other $12,500, and that Neufeld had the money, his own and Jacobs', or its equivalent, actually in his hands as an officer of the company, and that thereby appellee was induced to pay in her contribution, being falsely led to believe that by so doing the capi-

tal would be fully paid up and was based upon proper allegations in the declaration, a different case would be presented. But such is not the evidence. Appellee herself says that she understood the money of the others was to be paid in from time to time, " just as the business required it." It is conceded that both Neufeld and Jacobs did 'put in money,' and appellee's testimony as to what occurred on that occasion is entirely consistent with the view that the papers produced were certificates or drafts representing money of theirs then contributed.

I am of opinion that the declaration fails to state a sufficient cause of action.

" A verdict will aid a defective statement of a cause of action, but will never assist a statement of a defective cause of action." C. & A. R. R. Co. v. Clausen, 173 Ill. 100, 104.

The investment was unfortunate, and it is quite possible that appellant took advantage of appellee's confidence in him to induce her to join in the enterprise which proved unsuccessful. But I am unable to concur in the opinion that a case has been made out entitling her to recover in this action.