## Crane Company, Appellant, v. Charles E. Ummach, Appellee.

### Gen. No. 22,544.

1. FRAUD, § 24*—*when verdict for defendant improperly directed in action for damages against officer of corporation for making false statements as to its financial standing for purpose of obtaining credit.* In an action for fraud and deceit, where the plaintiff showed that the defendant had, for the purpose of securing a continuing line of credit for a corporation of which he was president, made a statement as to its resources and liabilities, upon which credit was given to the corporation and later to a corporation of another name in which the defendant was a stockholder but not an officer, and plaintiff offered to prove that said statement was materially false and misleading and that the two corporations, though differing in name, were one in corporate entity, *held* that the evidence properly offered or submitted tended to prove that material false representations were made by defendant upon which plaintiff relied in extending credit to the last-mentioned corporation, and that the court erred in directing a verdict for defendant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

2. FRAUD, § 127*—*when negligence of seller in delivering goods in reliance upon financial statement is question for jury.* Where goods were delivered to a buyer corporation two and one-half years after, and in reliance upon, a certain statement made by its president as to its financial condition with request for a continuing line of credit, which statement contained false and fraudulent representations, *held* that the seller was not negligent as a matter of law in so delivering the goods.

3. FRAUD, § 24*—*what is effect of change of name of corporation on liability of officer for making false financial statements for purpose of obtaining credit.* Where the president of a corporation made false and fraudulent representations as to its financial condition for the purpose of securing a continuing line of credit for the corporation, *held* that the fact that the name of the corporation was thereafter changed while its corporate entity was otherwise retained did not change the liability of such officer because of such representations for credit given such corporation in reliance thereon after such change of name.

4. FRAUD, §. 92*—*when exclusion of evidence in action for making false statement as to financial condition of corporation for purpose of obtaining credit is erroneous.* In an action for fraud and deceit in making false and fraudulent representations as to financial condition of a corporation for the purpose of securing continuing credit for the corporation, *held* that it was error for the court to refuse to admit evidence that such corporation and one of another name to which credit was given on such representations were one and the same corporation under different names.

Appeal from the County Court of Cook county; the Hon. ARTHUR J. GRAY, Judge, presiding. Heard in this court at the October term, 1916. Reversed and remanded. Opinion filed February 5, 1917.

ALDEN, LATHAM & YOUNG, for appellant; T. A. SHEEHAN, of counsel.

CULVER, ANDREWS, KING & COOK, for appellee.

MR. JUSTICE DEVER delivered the opinion of the court.

This is an action on the case for fraud and deceit, begun by plaintiff against the defendant in the County Court of Cook county. The declaration, consisting of two counts, avers that on January 10, 1912, the defend-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ant made an application to the plaintiff for a line of credit, and that to induce such credit and to procure the goods and merchandise of the plaintiff the defendant made certain false representations, upon which the plaintiff relied and upon which it delivered its goods to the defendant. Defendant filed a plea of the general issue. Trial was had in the County Court, and at the close of the plaintiff's case the court directed a verdict in favor of the defendant for costs. Plaintiff brings the case here for review.

The evidence submitted on behalf of plaintiff tends to prove that the W. S. Edwards Manufacturing Company was organized in the State of Illinois; that some time during the year 1911 the defendant became interested in that company and was made president thereof; that on December 21, 1911, the name of this corporation was changed to that of Ummach Manufacturing Company; that in the latter part of the year 1911 and prior to such change in the name of the corporation, Ummach called upon Mr. Stiles of the plaintiff company and requested a line of credit with plaintiff. Stiles requested Ummach to mail to him a statement of the financial condition of his company. Ummach complied with this request of Stiles and mailed him a letter a copy of which follows:

"Chicago, January 10, 1912.

"Mr. Stiles,
        c/o Crane Company,
Dear Sir:—

As per our recent conversation, we herewith submit a statement of our financial standing at the close of business December 31, 1911:

RESOURCES.

Accounts receivable ...........$37,826.72
Cash in bank and on hand..... 1,416.20
Merchandise, inventory, Dec.
        31, 1911 ................ 76,351.85
Machinery, tools, etc.......... 25,500.00
        (This item taken at 50 per
        cent. less than formerly)  ———— $141,094.77

LIABILITIES.

| | | |
|---|---|---|
| Capital stock ................ | $50,000.00 | |
| Accounts payable ............ | 32,783.16 | |
| Surplus ................... | 58,311.61 | $141,094.77 |

Respectfully,

CHARLES E. UMMACH.''

On receipt of this letter Stiles gave instructions to the proper officers of his company to extend credit to the Ummach Manufacturing Company in an amount not to exceed $1,000 or $1,200. Thereafter the plaintiff continued to sell goods to the Ummach Manufacturing Company and its successor, the W. S. Edwards Manufacturing Company, until the time they went into bankruptcy in the year 1914, and within a few weeks of the delivery to the Edwards Company of the last bill of goods sold to it by the plaintiff.

It also appears from the evidence that the name of Ummach Manufacturing Company was in turn changed back to that of W. S. Edwards Manufacturing Company on May 22, 1913; that a short time before this second change of name took place, Ummach had severed his official connection with the Ummach Manufacturing Company, although he retained a stock interest therein; that Stiles had a conversation with Ummach after this last change in name, in which conversation nothing was said one way or another about the financial condition of either the Ummach Company or the Edwards Company.

During the months of May, June and July, 1914, the plaintiff delivered goods to the W. S. Edwards Manufacturing Company of the cash value of $272.80. A short time thereafter the Edwards Company went into bankruptcy, and the plaintiff insists that there is now due it, after allowing certain credits, the sum of $129.63. It is sought to recover this amount from the defendant.

We are of the opinion that the court erred in directing the jury to return a verdict for the defendant,

as we believe that the evidence properly offered or submitted by the plaintiff fairly tends to prove that material false representations were made by Ummach upon which the plaintiff relied and because of which it extended credit to the corporation in which Ummach was interested as a stockholder or officer. The plaintiff offered to prove that the statements contained in the letter of January 10, 1912, were materially false and misleading, and that the then liabilities of the Ummach Manufacturing Company were in fact $119,411.68 instead of $32,783.16, as represented in the letter of Ummach to the plaintiff; that the corporation's name had been changed twice but that there had been no change in the corporate entity itself.

The trial judge seemed to be under the impression that the changes in the name of this corporation indicated that more than one corporation were involved in the transactions here referred to. Whether this be so or not, counsel for plaintiff offered to prove that as a matter of fact there was but one person or one corporation involved in the representations out of which this suit grew. We think counsel should have been permitted to make this proof. If the changes referred to here were in name only, if the same corporation had continued to do business under different names, then it cannot be held that the representations which were made by the defendant were made on behalf of one company and the credit given to another.

We are also of the opinion that the court erred in holding that the plaintiff was guilty of negligence as a matter of law. It is true that the goods for the value of which suit was brought were delivered two and one-half years after the representations were made, but these representations were made in pursuance of a request for a continuing line of credit. That the representations made by defendant were grossly fraudulent is not denied upon this record, and it cannot be said that the plaintiff was negligent as a matter of law in

relying upon them, coming as they did from one who was authorized to make them on behalf of his corporation.

There is no merit at all in the contention that a mere change in the name of a corporation could permit it to escape liability for its acts. Ummach was the agent of and had the right to speak for the corporation, whatever name or names it may have used in the transaction of its business, and under the law he is personally liable for such fraudulent conduct, if any, which may have resulted in damage and injury to the plaintiff. Whether the changes in the corporate entity were merely nominal, whether the representations were in fact made, and, if so, whether the plaintiff relied upon them, were questions of fact which should have been submitted to the jury.

In *Lowdon v. Fisk* (Tex. Civ. App.), 27 S. W. Rep. 180, the court said:

"It is well understood that such representations are made as a basis for continuing credit, and it is not necessary that they should be made exactly at the time of the sale. Such a requirement would be unreasonable. The length of time that has elapsed since the making of the statement, within reasonable limits, is for the consideration of the court and jury in passing on the question as to the extent that the sale was actually influenced thereby." See also, *Brown v. Lobdell, Farwell & Co.*, 51 Ill. App. 574.

For the error in directing a verdict in this case the judgment of the County Court will be reversed and the cause remanded.

*Reversed and remanded.*